CITY OF BOZEMAN, RESPONDENT, *v.* NELSON, APPELLANT.

(No. 5,640.)

(Submitted February 14, 1925.  Decided April 9, 1925.)

[237 Pac. 528.]

*Cities and Towns—License Fees—Motor Vehicles — Ordinances
—Validity—Appeal—Failure to Observe Statutory Require-
ments—Effect on Jurisdiction of Supreme Court.*

Cities and Towns—License Fees—Ordinance—When not Discriminatory.
    1.   An ordinance exacting the same license fee from all persons en-
    gaged in a particular business is not open to the charge that it is
    discriminatory.

Same—License Fees—When Proper.
    2.   While the legislature may not constitutionally authorize a city to
    provide revenue for general municipal purposes by the imposition of
    license taxes, it may properly authorize it to impose such a tax upon
    any industry or upon the right to transact any business which falls
    within the scope of police regulations.

Same—Reasonableness of License Fees—Discretion—When Courts will In-
terfere.
    3.   What is a reasonable license fee for the carrying on of any busi-
    ness in a city rests largely upon the sound discretion of the council,
    having reference to the circumstances and necessities of the case, and
    the courts will not adjudge an ordinance imposing a license a revenue
    measure unless the amount is manifestly unreasonable in view of its
    purpose as a regulation.

Same—Reasonableness of Fees—Presumptions—Burden of Proof.
    4.   The amount of a license fee demanded by a city under its power
    of regulation will be presumed to be reasonable unless the contrary
    appears, and the burden of overcoming the presumption rests upon
    him who asserts that the amount is unreasonable.

Same—License Fees—Incidental Raising of Revenue—Effect on Validity
of Ordinance.
    5.   Although revenue may result incidentally from an undisputed ex-
    ercise of the police power, that fact alone does not divest the regula-
    tion of its police character and make it an exercise of the taxing
    power.

1.   See 17 R. C. L. 483, 508.
2.   Power of municipal corporations to impose license fees, see note
in 2 Ann. Cas. 313.  See, also, 17 R. C. L. 529.
3.   See 17 R. C. L. 537.
5.   See 17 R. C. L. 539.

Same—Ordinance Imposing License Tax Valid in Part and Invalid in Part
—Rule.

6. Where a license ordinance is valid in part and void in part, the
portion which is invalid and distinctly separable from the remainder
will be rejected, and the part which it was within the power of the
city to enact preserved.

Same—Ordinance Imposing License Tax may Provide That if Portion
Invalid, Validity of Remaining Portion shall not Be Affected.

7. The city council has power to include a section in an ordinance
imposing license taxes to the effect that if any of its provisions
shall be declared invalid it shall not affect the validity of any other
part; hence the only portion which one charged with nonpayment of a
license fee can question is the one which imposed the fee upon his
particular business.

Same—Taxicabs Legitimate Objects of License Fees.

8. Taxicabs and auto-busses operated for hire are legitimate objects
of license fees.

Same—License Fees—Raising Revenue—Evidence—Insufficiency.

9. Evidence in an action against a taxicab owner for conducting his
business without first paying a license tax exacted by ordinance, *held*
insufficient to sustain defendant's contention that the fee exacted was
so greatly in excess of the expense attendant upon the issuance of
the license and the regulation of the business as to establish the fact
that it was collected for the purpose of general revenue, in failing to
show the amount collected under the particular section of the ordi-
nance or the amount necessary to be expended for enforcing the ordi-
nance. (See opinion on rehearing.)

Same—Prosecution for Failure to Pay License Fee Civil in Nature.

10. Proceedings against one for the infraction of a local police regu-
lation (failure to pay a business license tax) are not criminal in
their nature, and therefore the ordinary rules governing appeals in
civil cases are applicable.

Appeal—Statutory Requirements to be Complied With.

11. The statute providing for appeals to the supreme court must be
complied with; failure in this regard deprives the court of jurisdic-
tion to entertain the appeal.

Same—Disregard of Statutory Requirements — Lack of Jurisdiction in
Supreme Court to Entertain Appeal.

12. *Held,* under sections 9733, 9747, and the rules of the supreme
court, relative to taking of appeals, that where nineteen defendants
were charged with violations of a city ordinance, and the cases which
could not, under section 9820, have been joined, were tried together
under a stipulation of counsel that all the evidence introduced should
apply to each case, so far as applicable, and each defendant was found
guilty and a separate judgment entered against each, but only one per-
fected an appeal, his bill of exceptions reciting a stipulation that the
proceedings with reference to each in the district court were the
same, that the notice of appeal was the same in each case and that
all the notices were filed in the lower court on the same day, and
asking that the supreme court take jurisdiction of the appeals of the

6. Effect of partial invalidity of statute imposing license, see note
in Ann. Cas. 1916D, 56, 89.

8. Necessity of license to operate jitney busses, see notes in
L. R. A. 1918B, 914; L. R. A. 1918F, 475.

eighteen defendants other than the one who had properly perfected his appeal, that the appellate court did not acquire jurisdiction of any appeal other than the one.

Appeal and Error, 3 C. J., sec. 1031, p. 1039, n. 2.
Constitutional Law, 12 C. J., sec. 414, p. 906, n. 5.
Licenses, 37 C. J., sec. 14, p. 175, n. 3; sec. 43, p. 193, n. 58, 60; sec. 45, p. 195, n. 76; sec. 53, p. 201, n. 40; sec. 82, p. 230, n. 27; sec. 162, p. 269, n. 30; sec. 158, p. 267, n. 97.
Municipal Corporations, 28 Cyc., p. 372, n. 45; p. 373, n. 47 New.
Motor Vehicles, 28 Cyc., p. 36, n. 10.

*Appeal from District Court, Gallatin County; Ben B. Law, Judge.*

LESTER NELSON was convicted of operating auto taxis and busses without license in violation of city ordinance, and appeals from the judgment. Affirmed.

(Note: In the transcript on appeal E. J. Johnson, H. A. Smith, J. J. McCay, Seth Bohart, B. A. Shookman, M. J. O'Connell, L. W. Watson, M. J. Markt, O. J. Gray, R. W. Noe, John Kapomos, W. W. Reeder, Eugene Graf, Ira Kindig, Howard Huddleston, Jas. W. Steele and W. A. Summers were also named as defendants and appellants. Attempted appeals of these defendants dismissed.)

*Messrs. Keeley & Keeley,* for Appellant, submitted an original and a supplemental brief; *Mr. W. E. Keeley* argued the cause orally.

The basis of authority for an occupation tax or fee lies in the police power, and its validity depends on the extent of police power to regulate and control a given subject or business. (*In re Skelton,* 81 Okl. 134, 197 Pac. 495.) The police power can act only on such things as are hurtful to the comfort, safety and welfare of society. (*Ruhstrat* v. *People,* 185 Ill. 133, 76 Am. St. Rep. 30, 57 N. E. 41; *State* v. *Brown,* 37 Wash. 97, 107 Am. St. Rep. 798, 79 Pac. 635; *Bonnett* v. *Vallier,* 136 Wis. 193, 128 Am. St. Rep. 1061, 116 N. W. 883; *Ex parte Hayden,* 147 Cal. 649, 109 Am. St. Rep. 183, 82 Pac.

315; *State* v. *Redman,* 134 Wis. 89, 126 Am. St. Rep. 1003, 15 Ann. Cas. 408, 14 L. R. A. (n. s.) 229, 114 N. W. 137; *State* v. *Ramseyer,* 73 N. H. 31, 6 Ann. Cas. 445, 58 Atl. 958; *Ex parte Townsend,* 64 Tex. Cr. 350, 144 S. W. 628.)

Ordinances which are unreasonable and oppressive in their attempted exercise of the police power will be held void. (*Pinney* v. *Los Angeles,* 168 Cal. 12, L. R. A. 1915C, 282, 141 Pac. 620; *Ex parte Throop,* 169 Cal. 93, 145 Pac. 1029; note, 30 L. R. A. 415.)

License fees should not be as great in case of occupations, trades and professions which are beneficial to the community as in case of those not useful or beneficial, especially when immoral in their nature and tendency. (*State* v. *Moore,* 113 N. C. 697, 22 L. R. A. 472, 18 S. E. 342; *Dickey* v. *Davis,* 76 W. Va. 576, L. R. A. 1915F, 840, 85 S. E. 781; 21 Am. & Eng. Ency. of Law, 2d ed., 774, 775, 783, 784, 801; *Van Hook* v. *Selma,* 70 Ala. 361, 45 Am. Rep. 85.)

Section 64, 17 R. C. L. 551, lays down the proposition that the police power cannot exact license fees for regulation or regulate useful trades or vocations exercisable of common rights, and, among other instances, mentions horseshoers, laundrymen and department stores. In the case of *State* v. *Sheridan,* 25 Wyo. 347, 1 A. L. R. 955, 170 Pac. 1, it is held that a contractor is not subject to police regulation because his vocation has no tendency to offset the safety, health, morals or welfare of the general public. *State* v. *Brown,* 37 Wash. 97, 107 Am. St. Rep. 798, 68 L. R. A. 889, 79 Pac. 635, holds that the owner and manager of a dental office is not subject to regulation. It has been held that a wash-house needs no police regulation. (*Re Wan Yin,* 10 Sawy. 532.) The occupations of emigrant agent (*State* v. *Moore,* 113 N. C. 697, 22 L. R. A. 472, 18 S. E. 342), agriculture, merchandising, manufacturing and industrial trades (*Dickey* v. *Davis,* 76 W. Va. 576, L. R. A. 1915F, 840, 85 S. E. 781), sale of lemonade and similar articles (*Barling* v. *West,* 29 Wis. 307, 9 Am. Rep. 576), horseshoeing (*Bessette* v.

*People,* 193 Ill. 334, 56 L. R. A. 558, 62 N. E. 215), trading stamps (*Young* v. *Commonwealth,* 101 Va. 853, 45 S. E. 327), selling meat, fish, butter or other provisions where drygoods, *etc.,* are sold (*Chicago* v. *Netcher,* 183 Ill. 104, 75 Am. St. Rep. 93, 48 L. R. A. 261, 55 N. E. 707), barber (*Timmons* v. *Morris* (Wash.), 271 Fed. 721), contractor and plumber (*Wilby* v. *State,* 93 Miss. 767, 23 L. R. A. (n. s.) 677, 47 South. 465), and baker, printer, tinsmith, locksmith, carpenter, cabinet-maker and clerk (*Lochner* v. *New York,* 198 U. S. 45, 3 Ann. Cas. 1133, 49 L. Ed. 937, 25 Sup. Ct. Rep. 539 [see, also, Rose's U. S. Notes]), are not proper subjects of police regulation at all; not affecting either the health, morals, safety or welfare of the public generally; nor the business of selling tea, coffee, spices, *etc.* (*Ideal Tea Co.* v. *Salem,* 77 Or. 182, Ann. Cas. 1917D, 684, 150 Pac. 852; *People* v. *Marx,* 99 N. Y. 377, 52 Am. Rep. 34, 2 N. E. 29.)

Businesses and occupations are entitled, by virtue of their being a part of the city and inhabitants of the city, to the general police, fire and health protection and regulation as is accorded any other private citizen or inhabitant of such city. Trying the doors at night, to see if they are locked, is a service accorded to the business. It is the same service which is rendered to people living in the residence section, when they need police protection. Trying the doors and patrolling the streets in front of the business is a protection to the business itself, as distinguished from the definition of "special regulation," as above set forth. Such regulation and protection is paid for by general city taxation. (*Ex parte McCoy* (Cal.), 101 Pac. 419.) Any license or protection to the private property itself would be a revenue measure, the same as taxation for sidewalks or pavements in front of the business.

In the case of garages, the defendants owning and operating garages were required to pay not only the garage license of $25 but for accessories, storage, repairs, *etc.* This could not be done. (25 Cyc. 726; sec. 45, 17 R. C. L. 527; *Southern Exp. Co.* v. *R. M. Rose Co.,* 124 Ga. 581, 5 L. R. A. (n. s.) 619,

620, 53 S. E. 185; *New Galt House Co.* v. *Louisville,* 129 Ky. 341, 17 L. R. A. (n. s.) 566, 568, 111 S. E. 351.) Furthermore, all doubts as to the existence of a power in the city to license any given occupation must be resolved against the city. (Sec. 45, 17 R. C. L. 526; note to *Richmond & Danville R. Co.* v. *Town of Reidsville* (N. C.), 2 L. R. A. 284; 21 Am. & Eng. Ency. of Law, 2d ed., 783; *Commissioners of Cambridge* v. *Cambridge Water Company,* 2 Am. & Eng. Ann. Cas. 311; *Ex parte Dees,* 46 Cal. App. 656, 189 Pac. 1050.)

Where the total amount collected from license fees exceeds the cost of special regulation, the ordinance is not a regulatory measure, but is void. (*State ex rel. Bozeman* v. *Police Court,* 68 Mont. 435, 219 Pac. 810; *City of Philadelphia* v. *Western Union Tel. Co.* (Pa.), 40 Fed. 615; *Plumas County* v. *Wheeler,* 149 Cal. 758, 87 Pac. 909.) A license fee greater than the cost of controlling and supervising the license cannot be sustained on the ground that demands might be made against the city on account of what might happen in the future. (*City of Philadelphia* v. *Western Union Tel. Co.,* 40 Fed. 615; *Ex parte Hall,* 50 Cal. 786, 195 Pac. 975.)

*Mr. George D. Pease,* City Attorney, and *Mr. Walter Aitken* of Counsel, submitted a brief and one on rehearing; *Mr. Aitken* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

Ordinance No. 535 of the city of Bozeman is entitled: "An ordinance requiring those engaged in certain occupations, industries, trades, pursuits and professions in the city of Bozeman to pay a license fee in aid of the police regulations of the city of Bozeman, providing for the granting, refusal, suspension and revocation of such licenses, providing penalties for violation of this ordinance. * * * " Section 1 thereof provides: "That under and by virtue of the power and authority vested in the city of Bozeman by the provisions of subdivi-

sions three (3), four (4), sixteen (16), and fifty-four (54) of section No. 5039, section 5224, and section 5409, Revised Codes of Montana, 1921, and in aid of the police power and regulations of the said city of Bozeman, it is hereby ordained that no person, firm, association or corporation, shall conduct, operate, transact, engage in, or carry on, any of the industries, trades, pursuits, professions, vocations or businesses, within the city of Bozeman, hereinafter specified and enumerated, without first applying for and obtaining a license therefor from said city of Bozeman, as herein provided, and, if such application for license be granted, shall pay therefor as follows: * * * Auto taxis for hire. First taxi, $15.00 per year; each additional one, $12.00 per year. Auto busses for hire. First bus, $25.00 per year; each additional one, $15.00 per year. * * * ''

Section 14 provides for the punishment of any person who engages in carrying on any business specified in the ordinance without first procuring a license therefor.

Section 16 of the ordinance is as follows: ''If any provision of this ordinance shall be held to be in contravention of the Constitution of the United States, or of the state of Montana, or invalid for any reason, the invalidity of such provision shall in no manner affect the other provisions of this ordinance, but every other section and every other provision shall be upheld as the legislative will of the city of Bozeman, Montana, to the same extent as though such unconstitutional or invalid provisions had not been a part of this ordinance.''

In *State ex rel. City of Bozeman* v. *Police Court,* 68 Mont. 435, 219 Pac. 810, this ordinance was held to be *prima facie* valid. The general nature of the ordinance and many of its provisions are set out in the opinion in that case, and need not be repeated here.

On October 27, 1923, a complaint was filed in the police judge's court of the city of Bozeman charging that the defendant Lester Nelson on or about the twenty-sixth day of October,

1923, within the corporate limits of the city of Bozeman, "did operate and carry on the business of auto taxis and auto busses without first having procured and without procuring or having the license so to do" in violation of section 1 of Ordinance No 535. To this complaint the defendant subsequently entered a plea of not guilty, and the case was set for trial on October 29, 1923, at which time, according to the police judge's docket entry, the defendant, through his counsel, "admitted all the allegations of the complaint, but objected that the Ordinance No. 535 was invalid." Whereupon the defendant was found guilty of the charge contained in the complaint, and a fine of $20 imposed against him. From this judgment the defendant appealed to the district court. A trial was had in the district court on the appeal, and on May 29, 1924, a judgment was duly rendered and entered finding the defendant guilty and imposing a fine of $20 against him. From this judgment the defendant has appealed to this court.

At the trial in the district court the defendant contended, and in this court likewise contends, that Ordinance No. 535 is void and invalid, because (1) it was designed and intended to be a revenue measure, and (2) because of discrimination.

In reference to counsel's contention that the ordinance is [1] void by reason of discrimination, it is sufficient to state that it exacts the same license fee from all persons, firms or corporations engaged in running auto-taxis and auto-busses for hire. It is uniform as to all in the same class, and that is all that is required. (*City of Bozeman* v. *Cadwell,* 14 Mont. 480, 39 Pac. 1042; *State ex rel. Sam Toi* v. *French,* 17 Mont. 54, 30 L. R. A. 415, 41 Pac. 1078; *Quong Wing* v. *Kirkendall,* 39 Mont. 64, 101 Pac. 250.)

It was long ago decided by this court that under our consti- [2] tutional provisions it is not competent for the legislature to authorize a city to provide revenue for general municipal purposes by the imposition of license taxes, but that it could properly authorize a city to impose a license tax upon any

industry or upon the right to transact any business which falls within the scope of police regulations. (*Johnson* v. *City of Great Falls,* 38 Mont. 369, 16 Ann. Cas. 974, 99 Pac. 1059; *Reilly* v. *Hatheway,* 46 Mont. 1, 125 Pac. 417.)

By subdivisions 3, 4, 16 and 54 of section 5039, sections **[3]** 5224 and 5409, Revised Codes of 1921, the legislature has expressly authorized cities to impose a license tax for carrying on a business such as this defendant was pursuing in the city of Bozeman at the time this controversy arose, so that the principal question confronting us is whether the amount exacted from this defendant for a license to carry on his business was to provide revenue for general municipal purposes or whether it was for regulatory purposes under the police power.

What is a reasonable license fee must depend largely upon the sound discretion of the city council, having reference to the circumstances and necessities of the case. Unless, however, the amount is manifestly unreasonable, in view of its purpose as a regulation, the court will not adjudge it a revenue measure. (*City of Mankato* v. *Fowler,* 32 Minn. 364, 20 N. W. 361; *In re White,* 43 Minn. 250, 45 N. W. 232; *Vansant* v. *Harlem Stage Co.,* 59 Md. 330.)

"When the power [to license] has been properly delegated the courts will not interfere in its exercise except when there has been a gross abuse by the municipal authorities of the discretion which it is held they must possess because of their greater knowledge of the needs of the municipality and the extent of the protection afforded either to the public or the licensees by the exaction of the license." (Abbott's Municipal Corporations, p. 983 (cases cited); McQuillin's Municipal Corporations, sec. 1002; *Id.,* sec. 794.)

The amount required to be paid for a license demanded **[4]** under a power to regulate will be presumed to be reasonable, unless the contrary appears, and the burden of overcoming this presumption rests upon the one who asserts that the amount is unreasonable. (*State* v. *Inhabitants of Trenton,* 53

N. J. L. 132, 11 L. R. A. 410, 20 Atl. 1076; *Fayetteville* v. *Carter*, 52 Ark. 301, 6 L. R. A. 509, 12 S. W. 573; *Van Hook* v. *Selma*, 70 Ala. 361, 45 Am. Rep. 85; *Littlefield* v. *State*, 42 Neb. 223, 47 Am. St. Rep. 697, 28 L. R. A. 588, 60 N. W. 724.)

It thus becomes necessary to inquire whether the defendant has sustained the burden of establishing the fact that the amount required to be paid by him as a license fee is so manifestly unreasonable as to show that the city authorities of Bozeman abused the discretion lodged with them in fixing the amount of this fee, so as to warrant the court in interfering with its enforcement.

The city council has a large discretion in the exercise of its judgment as to the proper amount of the fee, and the courts will not interfere with its action, unless it is palpably manifest that the amount charged is excessive. (*State* v. *Finch*, 78 Minn. 118, 46 L. R. A. 437, 80 N. W. 856.)

Although revenue may result incidentally from an undis-
[5]   puted exercise of the police power, as is frequently the case, that fact does not divest the regulation of its police character and make it an exercise of the taxing power. (17 R. C. L., p. 543, sec. 59.)

A considerable amount of testimony was introduced at the trial for the purpose of showing the total amount collected from all licensees under this ordinance and the disposition made of the same. This testimony was wholly irrelevant to any issue involved in this case.

The rule of construction, where license ordinances are valid
[6]   in part and void in part, is to separate them, disregarding the part which was beyond the power of the city to enact and preserving only the part which was within the power of the city. That a portion of an ordinance is invalid and must fail does not render the entire ordinance void and invalid as to wholly independent provisions. (*State ex rel. Norwood* v. *Byles*, 93 Ark. 612, 37 L. R. A. (n. s.) 774, 126 S. W. 94; *City of Fort Smith* v. *Scruggs*, 70 Ark. 549, 19 Am. St. Rep. 100,

58 L. R. A. 921, 69 S. W. 679, 17 R. C. L. 552.) "Nothing is better settled than that if the part of a law or ordinance which is invalid is distinctly separable from the remainder, the latter can stand and the former be rejected." (*Ex parte Christensen,* 85 Cal. 208, 24 Pac. 747; *In re Haskell,* 112 Cal. 412, 32 L. R. A. 527, 44 Pac. 725; *North Cedar Co.* v. *French,* 131 Wash. 394, 230 Pac. 837.)

Section 16 of the ordinance above quoted declares in effect [7] that if any of the provisions shall be declared invalid, such declaration shall not affect the other provisions, but every other section and provision shall be upheld as the legislative will of the city to the same extent as though such invalid provision was not contained therein. That it was competent for the city to make such a provision in the ordinance and that it is binding upon the courts has been expressly declared in *North Cedar Co.* v. *French, supra,* and *State ex rel. Davis-Smith Co.* v. *Clausen,* 65 Wash. 156, 37 L. R. A. (n. s.) 466, 117 Pac. 1101. In the case last cited it is said: "It is there [in the statute] expressly provided that the adjudication of invalidity of any part of the Act shall not affect the validity of the Act as a whole or any other part thereof. This means that the legislature intended the Act to be enforced as far as it may be, even though it might not be valid in its entirety. It was competent for the legislature so to provide. Anything it could have eliminated itself and left an operative Act, can be eliminated by the courts without destroying the entire Act, if it is the will of the legislature that the remaining parts of the Act shall stand after such elimination."

Each license fee imposed by this ordinance is separable from all the others. Some of these impositions might be so large as to show on the face of the ordinance itself that they are invalid. Much of the total amount collected might be derived from such sources, but that fact could not avail the defendant, unless he brought himself within some of such provisions.

The portions of the ordinance imposing such invalid amounts could be disregarded and the balance of it remain as a valid legislative declaration of the city and enforceable as such. This leads to the conclusion that the only portions of the ordinance which this defendant can question are those which impose a license fee of $15 per year on the first taxi owned and operated by him, and $12 per year for each additional one; and $25 per year for one auto-bus, and $15 per year for each additional one.

It cannot be questioned that taxis and auto-busses operated [8] for hire are the legitimate objects of license fees. (*State ex rel. City of Bozeman* v. *Police Court, supra.*) We then come to the specific question whether the above-mentioned license fees [9] required to be paid by the defendant for the privilege of operating auto-taxis and auto-busses for hire are so manifestly unreasonable, in view of the purposes of the ordinance, that the court can declare that the municipal authorities of Bozeman in fixing their amounts were seeking to provide revenue for general municipal purposes instead of providing funds for regulatory purposes under the police power. The defendant having asserted as his defense that the fees were exacted for the purpose of revenue and not for regulatory purposes, the burden of proving this fact was cast upon him.

Section 5 of Ordinance No. 535 provides that all licensees under it shall be subject to the provisions of all the ordinances of the city imposing police regulations. At pages 527 to 529 of the transcript thirty-six ordinances of the city of Bozeman are listed by number, and the substances of their titles are given. However, none of these ordinances are embraced in the bill of exceptions, so we have no means of determining what regulatory provisions they contain, but it was stipulated between counsel at the trial that each and all of them are police regulations, and that this defendant is affected, controlled and regulated in the conduct of his business by one or more of them. Which of these ordinances affect the defendant in the

conduct of his business, and the extent and nature of the control and regulation imposed upon him thereby, was not pointed out, and there is no way by which it can be ascertained from this record.

The defendant himself testified that he was in the taxicab business; that he operated four taxicabs most of the time, and in busy seasons had six or seven; that he had a place of business and waiting-room which was always open; that he conducted his business wholly upon the streets of Bozeman; that he hauled passengers to and from the railway stations; that he knew of ordinances of the city regulating soliciting by taxicab men at the stations and governing the location of his cabs and that the traffic ordinances of the city applied to him. Also he expressed the opinion that his place needed no special police regulation; that he did not know of anything associated with his business that necessitated or required supervision or that menaced the morals, safety or health of the community; that the health and police officers never made any inspection of his cars or waiting-room, and never gave him any instructions or directions relative to the regulation or conduct of his business in 1923.

J. F. Metheny, chief of police, testified that special police service and protection had been made necessary and provided by the business activity of this defendant, and that inspections of the same had been made from time to time.

W. G. Alexander, chief of the fire department, testified as to the general fire inspection made by him and his assistants of all places of business in the city; that places where automobiles are kept are considered very hazardous, and need close inspection; and that every person who operates a bus line came under his inspection.

There was a considerable amount of testimony tending to establish the fact that the police, fire and health departments of the city made frequent inspections of all lines of business conducted in the city. In this connection it might be that the

defendant was so punctilious in the care of his business and in the observance of all the regulatory ordinances governing it that no inspection by the health officers or instructions from the police department were necessary, but this fact would not do away with the necessity of such ordinances and regulations or the necessary expense of having officers to enforce them.

The evidence disclosed that the city of Bozeman has a population of about 9,000. It was not shown how many persons, firms and corporations were engaged in running auto-taxis and auto-busses for hire. No attempt was made by the defendant to show the expense reasonably necessary for the enforcement of the ordinances of the city regulating the soliciting by taxi-cab men at the stations or governing the location of cabs on the streets or of any other of the thirty-six regulatory ordinances listed in the transcript, some of which, according to the stipulation of counsel, were applicable to the business carried on by the defendant. ·

Upon this record the trial judge found the defendant guilty, and by such finding necessarily must have held that the defendant had failed to establish his contention that the amount of the license fee exacted from him was so greatly in excess of the expense attendant upon the issuance of the license and the regulation and control of his business as to establish the fact that the license fee was collected for the purpose of general revenue and not for the purpose of regulation and supervision of his business.

At the trial of this case in the district court, and in their [10] briefs filed in this court, counsel appear to have proceeded upon the theory that this is a criminal prosecution. Such, however, is not the fact. In *City of Helena* v. *Kent,* 32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258, it was expressly held that proceedings against one for the infraction of a local police regulation are not criminal in their nature. To the same effect are the cases of *State ex rel. Butte* v. *District Court,* 37 Mont. 202, 95 Pac. 841, and *State ex rel. Streit* v. *Justice Court,*

45 Mont. 375, 48 L. R. A. (n. s.) 156, 123 Pac. 405. For this reason the ordinary rules governing appeals in civil actions are applicable to this case.

From a careful examination of the entire record it cannot be said that the evidence preponderates against the conclusions of the trial judge, and under such condition it is the duty of this court to affirm the judgment.

From the record filed in this case it appears that at about [11, 12] the time this proceeding was instituted against the defendant like action was taken against eighteen other persons for violations of various provisions of Ordinance No. 535. The nineteen defendants each had a separate trial in the police judge's court. Each was found guilty, and a separate judgment entered against him, and each took a separate appeal to the district court. In that court, as a matter of convenience, the cases were tried together under a stipulation of counsel that all the evidence introduced should apply to each case so far as material thereto. Upon such trial each of the nineteen defendants was found guilty, and a separate judgment rendered and entered against him.

The defendant Lester Nelson perfected an appeal by filing a notice and undertaking on appeal, and in due course filed in this court a transcript containing the judgment-roll in his case and a bill of exceptions duly settled and allowed. In this bill of exceptions there is contained a stipulation entered into between counsel for plaintiff and counsel for each of the other eighteen defendants to the effect that the proceeding in the district court with reference to the defendants other than Nelson were the same as in the *Nelson Case,* except as to the name of the defendant and the particular violation of the ordinance charged; also that the notice of appeal in each case, other than against Nelson, is the same as that of the defendant Nelson, with the exception of the name, and that all of said notices of appeal were filed in the district court on the same date. Under this stipulation counsel have asked this court to assume

that it has jurisdiction to consider the attempted appeals of the eighteen defendants other than Nelson. This may not be done.

The statute providing for appeals to this court must be complied with. A failure of appellants in this regard leaves this court without jurisdiction to entertain the appeal. (*Washoe Copper Co.* v. *Hickey,* 23 Mont. 319, 58 Pac. 866; *Featherman* v. *Granite County,* 28 Mont. 462, 72 Pac. 972; *Jackway* v. *Hymer,* 42 Mont. 168, 111 Pac. 720.)

Section 9733, Revised Codes of 1921, provides that an appeal is taken by filing with the clerk of the court in which the judgment or order appealed from is entered a notice stating the appeal from the same, and serving a similar notice on the adverse party or his attorney. Section 9745 provides that on an appeal from a judgment appellant must furnish this court with a copy of the notice of appeal, of the judgment appealed from, and of all papers and evidence used on the hearing in the court below; and section 9747 provides that, if the appellant fails to furnish the requisite papers, the appeal may be dismissed. This latter section does not specify the time within which the papers must be filed. That matter is left to be regulated by rule of court. By Rule IV of this court the appellant is charged with the duty of having the transcript on appeal filed with the clerk of this court within sixty days after the appeal is perfected. None of the defendants other than Nelson filed a transcript on appeal in this court.

There were nineteen separate judgments entered in the district court. While of course it was competent for counsel to stipulate, as they did, that the nineteen cases might be tried at the same time, and all the evidence produced might, so far as applicable, be considered in each case, the actions could not have been consolidated under the provisions of section 9820, Revised Codes of 1921, for the reason that they could not have been joined in the beginning.

Despite the stipulation of counsel as to the method of trial, there still remained nineteen actions upon which separate judgments were in fact entered. These actions were as separate and distinct from each other as though they had been on nineteen different promissory notes given to the plaintiff by nineteen different defendants, upon which nineteen separate judgments might have been entered, and it would hardly be supposed by anyone that in such an instance a recital in the record on an appeal by one of the defendants similar to the recitals in the record in this case above referred to would confer upon this court jurisdiction to consider all of the nineteen cases on the one appeal.

We hold that the recital in the stipulation above referred to that the defendants other than Nelson had filed their notices of appeal in the district court is not sufficient to confer jurisdiction upon this court to entertain their appeals.

The attempted appeals of the defendants other than Nelson are dismissed, and the judgment against the defendant Lester Nelson is affirmed.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES HOLLOWAY and MATTHEWS, and HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.

ON REHEARING.

## OPINION: PER CURIAM.

Subsequent to the time when the opinion of the court was handed down in this case on April 9, 1925, a rehearing was granted on application of the defendant.

Upon consideration of the case, after the reargument, we are satisfied with the result originally reached. However, the paragraph in the opinion which reads: "A considerable amount of testimony was introduced at the trial for the purpose of showing the total amount collected from all licensees under this

ordinance and the disposition made of the same. This testimony was wholly irrelevant to any issue involved in this case,'' without amplification might be misleading. It was not the intention to declare that a situation might not arise in which such testimony would be material and relevant. If, for instance, the defendant Nelson had in this case shown the total amount collected from all licensees under the section of the ordinance applicable to the business being conducted by him, and had likewise shown the amount reasonably required to be expended for the regulatory supervision of all such licensees, and the amount collected should have appeared to be so much in excess of the amount required to be expended for such purpose as to have left the court in doubt whether the amount collected was so unreasonable as to render that section of the ordinance invalid, we think it would then have been competent for the court, in determining this question, to have taken into consideration the operation of the ordinance as a whole; and, if upon such consideration it should have appeared that the total amount collected from all licensees under it was so much in excess of the amount reasonably required for the regulatory supervision of all the licensees thereunder as to have indicated that the general purpose and intent of the whole ordinance was to raise revenue, this fact could properly have been considered by the court as a circumstance in determining whether the amount collected from the licensees under the particular section in question was so unreasonably excessive as to render it invalid. But, as pointed out in the opinion, the defendant Nelson did not introduce any testimony showing the amount collected under the particular section of the ordinance which he was attacking or the amount necessary to be expended for enforcing the ordinances governing the conduct of the businesses thereby licensed, so as to make the testimony referred to in the above-quoted paragraph of the opinion material or relevant in his case.

With the foregoing suggestions, the opinion handed down on April 9, and the conclusions therein announced, are adopted as the decision of the court.