STATE EX REL. MARQUETTE, RESPONDENT, v. POLICE COURT ET AL., APPELLANTS.

(No. 6,525.)

(Submitted November 15, 1929. Decided December 28, 1929.)

[283 Pac. 430.]

*Mr. W. E. Keeley* and *Miss Virginia McGuire,* for Appellants, submitted a brief; *Mr. Keeley* argued the cause orally.

*Mr. S. P. Wilson* and *Mr. K. W. MacPherson,* for Respondent, submitted a brief; *Mr. MacPherson* argued the cause orally.

MR. JUSTICE ANGSTMAN delivered the opinion of the court.

On January 21, 1929, there was filed in the defendant police court a verified complaint in an action entitled "City of Deer Lodge, Plaintiff, vs. G. J. Marquette, Defendant," which, omitting title of court and cause, reads as follows:

"Upon this, the 21st day of January, 1929, before me personally appeared Ed. Cain, Chief of Police in and for said City of Deer Lodge, who, upon being duly sworn and examined upon oath, deposes and says: That at the City of Deer Lodge, County of Powell, and State of Montana, on or about the 31st day of December, A. D. 1928, and before the making and filing of this complaint, the above named defendant G. J. Marquette was guilty of a violation of Ordinance No. 280 of the City Ordinances of the City of Deer Lodge, the said ordinance being an ordinance passed by the City Council of said City of Deer Lodge, approved by the Mayor, and attested by the City Clerk of said city on the 5th day of December, A. D. 1927, and duly published as required by law, the same being entitled 'An Ordinance requiring those engaged in certain occupations, industries, trades, pursuits and professions in the city of Deer Lodge to pay a license fee in aid of the police regulations of the City of Deer Lodge, providing for the granting, refusal, suspension and revocation of such licenses, providing penalties for violation of this ordinance and repealing Ordinance number 171, of said city of Deer Lodge, and all other ordinances and parts of ordinances of the City of Deer Lodge in conflict herewith.'

"That said defendant G. J. Marquette, then and there being, on said 31st day of December, 1928, at and in the City of Deer Lodge, Powell County, Montana, did then and there wilfully and unlawfully violate said ordinance, as follows, to-wit: That the said defendant did then and there, wilfully and unlawfully engage in the business, profession and trade of a physician and surgeon, without first having procured the license therefor required by said ordinance. All of which was

in violation of, and against the Ordinances of said City, in such cases made and provided and against the peace and dignity of said City.

"Wherefore, Deponent prays that a warrant herein may issue out of this court for the said defendant and that defendant G. J. Marquette may be arrested and dealt with according to law.

"ED. CAIN."

Upon the filing of the complaint, a warrant of arrest was issued and served upon relator, who appeared specially to challenge the jurisdiction of the court over his person. His objection to jurisdiction being overruled, he applied to the district court of Powell county for a writ of prohibition to prohibit the further prosecution of the action, basing his right to the writ upon the contention that the action brought against him is a civil action, and that jurisdiction over him can be acquired only by the issuance and service of a summons. Upon the filing of the application for the writ, an alternative writ and order to show cause was issued.

Subsequently defendants filed a motion to quash the alternative writ upon the ground that the application therefor did not state facts sufficient to justify its issuance. The motion to quash was denied, and the defendants were granted leave to plead further. Defendants elected to stand on their motion, and judgment was entered, in which the court found that the action in the defendant court is a civil action, and decreed that the alternative writ be made peremptory, and restrained the defendants from "proceeding further in said action under a warrant of arrest or as a criminal action, but that further proceedings in said action, if any there be, be as in a civil action, and after the issuance and service as provided by law, of a summons and complaint in said action." This appeal is from the judgment.

The decisive question presented is whether the defendant court had acquired jurisdiction over relator by the issuance and service of the warrant of arrest instead of a sum-

mons. The solution of the question depends upon the nature of the proceedings, whether civil or criminal.

The exact character of proceedings for violation of municipal ordinances is a matter upon which courts are divided. Some courts characterize the proceedings as civil, others as quasi civil; some as criminal, others as quasi criminal; and still others take the view that the proceedings may be considered criminal from some points of view and civil from other viewpoints. Cases supporting these various holdings are collected in 43 C. J. 444, in the note in 33 L. R. A. 33, 4 L. R. A. (n. s.) 782, 48 L. R. A. (n. s.) 161, and Ann. Cas. 1917A, 330.

Many courts take the view that whether the proceeding is civil or criminal in character depends upon whether the offense involved is also made punishable by the state statute. We think the nature of the action must be determined by the relief sought in the proceeding, without regard to the question whether some other proceeding may or may not be brought under the state statutes. In this respect we agree with the supreme court of Wisconsin when it said: "It is difficult to understand how the nature of the action under the ordinance can be made to depend wholly on the fact that the act complained of can be made the basis of a criminal action. The nature of the action under the ordinance should be determined by the proceeding itself, not by the fact that the offender may be subject to punishment in some other proceeding or in some other court because of the act which is alleged to be in violation of the ordinance." (*City of Milwaukee* v. *Johnson,* 192 Wis. 585, 213 N. W. 335, 337.) Here the precise nature of the penalty that may be imposed upon conviction is not definitely disclosed. The ordinance alleged to have been violated is not before us. It sufficiently appears, however, from the complaint. filed that the action is one to impose a fine or penalty, and there is nothing in the record to indicate that the ordinance prescribes a remedy by civil action. If the ordinance does provide a specific remedy by civil action, it was incumbent upon relator to make this fact appear by appropriate allegations in his petition for the writ.

But counsel for relator take the broad position that all actions for the infraction of city ordinances are civil in nature and not criminal prosecutions.

The cases of *City of Helena* v. *Kent*, 32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258, and *State ex rel. City of Butte* v. *District Court*, 37 Mont. 202, 95 Pac. 841, are pressed to our attention, in both of which it was held that prosecutions for 'the violation of city ordinances are not prosecutions that must be conducted in the name of the state of Montana, within the meaning of section 27, Article VIII, of the Constitution. But the cases do not intimate that such prosecutions may not be crimes or criminal offenses within the meaning of other constitutional or statutory provisions.

By subdivision 35 of section 5039, Revised Codes of 1921, cities and towns are authorized "to establish and maintain a jail for the confinement of persons convicted of violating the ordinances of the city or town; to make rules for the government of the same, and to cause the prisoners to work on streets or elsewhere within three miles of the city." But section 28 of Article III of the Constitution commands that "there shall never be in this state either slavery or involuntary servitude, except as a punishment for crime, whereof the party shall have been duly convicted."

Would it be contended seriously by anyone that subdivision 35, supra, is unconstitutional in so far as it authorizes involuntary servitude for violating a city ordinance because such violation can never amount to a crime within the meaning of section 28, Article III, of the Constitution?

The supreme court of Utah, in *Salt Lake City* v. *Bernhagen*, 56 Utah, 159, 189 Pac. 583, like this court, has held that prosecutions for the violation of a city ordinance need not be in the name of the state, within the meaning of a constitutional provision identical with our section 28, supra, and yet that court holds that an action prosecuted by a city for violation of a city ordinance is a criminal case within the meaning of statutory provisions governing appeals in criminal cases, and that the city has no right of appeal. (*Castle Dale City*

v. *Woolley*, 61 Utah, 291, 212 Pac. 1111; *Salina City* v. *Freece*, 61 Utah, 574, 216 Pac. 1078; *Town of Ophir* v. *Jorgensen*, 63 Utah, 288, 225 Pac. 342.)

We approach the consideration of the determinative question of the right of the police court to issue a warrant of arrest in ▇ actions for violations of city ordinances, fully cognizant of the fact that such courts, like justices' courts, are courts of limited jurisdiction, and have only such jurisdiction as is expressly conferred upon them.

"Unless the authority is conferred by law, a local magistrate has no power to issue a warrant of arrest for the violation of an ordinance which does not constitute a public offense against the criminal laws of the state, and take a bail bond for the defendant's appearance." (3 McQuillin on Municipal Corporations, 2d ed., sec. 1141.) As said in *Cauthron* v. *State*, 43 Ark. 128, "if the power exists it must be found in the statutes. Otherwise officers and courts cannot assume it, however convenient it may appear. It does not exist at common law as incident to municipal corporations."

What authority, then, has been conferred upon police magistrates? A police court is established in each city or town (sec. 5087, Rev. Codes 1921), which has concurrent jurisdiction with the justice of the peace over certain public offenses made so by state law, and which must be prosecuted in the name of the state (sec. 5088, Id.; *State ex rel. City of Butte* v. *District Court*, supra). And, as indicative of the legislative intent to regard some proceedings for the violation of city ordinances as criminal, it is provided in section 5089 that: "The police court also has exclusive jurisdiction: 1. Of all proceedings for the violation of any ordinance of the city or town, both civil and criminal, which must be prosecuted in the name of the city or town." The proceedings in the police court in civil actions are governed by sections 9725 to 9728, Revised Codes 1921 (sec. 5093, Id.), which require the issuance of a summons. (Sec. 9726, Id.) Proceedings in criminal actions or public offenses in police courts are regulated by sections 12302 to 12347, Revised Codes 1921 (sec. 5092, Id.), which

authorize the issuance of a warrant of arrest. (Sec. 12303, Id.) A police magistrate is also given authority by section 11618 to issue a warrant for the arrest of a person "charged with a public offense."

The question reduced to final analysis is this: Is a proceeding ██ to impose a fine for the violation of a city ordinance one for a "public offense," as that term is used in sections 11618 and 12302, supra? We are aided in the determination of this question by the legislative definition of a public offense. Section 10721, Revised Codes 1921, defines it as follows: "A crime or public offense is an act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction, either of the following punishments: 1. Death; 2. Imprisonment; 3. Fine; 4. Removal from office; or, 5. Disqualification to hold and enjoy any office of honor, trust, or profit in this state."

It will not do to say that a city ordinance is not a "law" within the meaning of section 10721. The legislature has expressly authorized the cities and towns to enact ordinances such as the one here involved and "to impose penalties for failure to comply with such license requirements." (Subds. 3 and 48, sec. 5039, Rev. Codes 1921.) The state has thus made the city its agent to define and punish by ordinance offenses against the municipality. This is not an unconstitutional delegation of legislative power. (12 C. J. 859, 862.) Valid ordinances, passed by the municipality with the design of the legislature, have, within the territorial jurisdiction of the municipality, the same force, and are to be treated as, legislative acts of the state. The supreme court of the United States in *King Mfg. Co.* v. *City Council of Augusta*, 277 U. S. 100, 72 L. Ed. 801, 48 Sup. Ct. Rep. 489, in speaking of this, said: "It of course rests with each State to determine in what form and by what agencies its legislative power may be exerted. It may legislate little or much in its constitution, may permit the electorate to make laws by direct vote, may entrust its legislature with wide law-making functions and may delegate legislative authority to subordinate agencies, such as

municipal councils and state commissions. But whether this power be exerted in one form or another, or by one agency or another, the enactments put forth, whether called constitutional provisions, laws, ordinances or orders, are in essence legislative acts of the State; they express its will and have no force otherwise. As respects their validity under the Constitution of the United States all are on the same plane. If they contravene the restraints which that instrument places on the legislative power of a State they are invalid, no matter what their form or by what agency put forth; for, as this Court has said, the protection which these restraints afford applies 'whatever the form in which the legislative power is exerted; that is, whether it be by a constitution, an act of the Legislature, or an act of any subordinate instrumentality of the State exercising delegated legislative authority, like an ordinance of a municipality or an order of a commission.' (*Standard Scale Co.* v. *Farrell*, 249 U. S. 571, 577, 63 L. Ed. 780, 39 Sup. Ct. Rep. 380, 382.)''

Again, the legislative intent to include prosecutions for the violation of city ordinances as public offenses is manifest from section 12302, supra. This section, after requiring proceedings before a police court for a public offense to be commenced by a complaint in conformity with the requirement of section 11607, contains this statement: ''A city or town ordinance may be referred to by its title and section, and the number thereof.'' Reference to the manner of pleading an ordinance in this section indicates that the legislature intended that some proceedings for the violation of city ordinances were for public offenses. Also the legislature has made it the duty of the chief of police to ''arrest all persons guilty of a breach of the peace or for the violation of any city or town ordinance, and bring them before the police judge for trial.'' (Sec. 5037, Rev. Codes 1921.) This statute, of course, has no relation to violations of city ordinances which give rise to civil actions and which are governed by section 9725 et seq., but it clearly indicates that the violation of some ordinances gives rise to an offense justifying

arrest as in a criminal action. And nowhere do we find that the legislature has drawn any distinction between the violation of an ordinance defining an offense which is also made punishable by statute, and one that is not punishable by statute. As before stated, whether a proceeding for the violation of any ordinance constitutes one for a "public offense" must be determined by the proceeding itself.

Certainly the violation of a city ordinance constitutes an "offense." The legislature has so recognized it. In enumerating the powers of the city or town council, the legislature has granted authority "to impose fines and penalties for the violation of any city ordinance, but no fine or penalty must exceed three hundred dollars, and no imprisonment must exceed ninety days for any one offense." (Subd. 48, sec. 5039, Rev. Codes 1921.)

Since the ordinance is operative only within the limits of the jurisdiction of the municipality, the question arises: Is the offense a "public" one? We think it is. The supreme court of Minnesota has had occasion to pass upon this question in the case of *State* v. *Cantieny*, 34 Minn. 1, 24 N. W. 458, 462, and said: "But it is claimed that, admitting the ordinance to be valid, and that the defendant was engaged in violating it in the presence of the officer, the officer had no right to arrest without a warrant, because, as is said, the breach of the ordinance did not constitute a public offense. We hold the contrary. The charter expressly confers upon the police officers of the city, in addition to other powers, the powers of constables at common law and by the laws of the state. The statute of the state authorizes any peace officer to arrest, without warrant, for a 'public offense committed or attempted in his presence.' (Gen. Stats. 1878, Chap. 105, sec. 11.) Although the offense does not amount to a breach of the peace (*Wahl* v. *Walton*, 30 Minn. 506; s. c., 16 N. W. 397), the term 'offense' here used is defined to be 'a breach of the laws established for the protection of the public, as distinguished from an infringement of mere private rights,—a punishable violation of law.' (Abb. Law Dict.) 'The doing of that which a penal law

forbids to be done, or omitting to do what it commands.' (Bouv. Law Dict.) The term 'public offense' means no more. The word 'public' was not intended to express the idea of a distinction between offenses made such by common law or by general statute, and those defined by a law having but a limited territorial operation. We think the term 'public offenses,' as here employed, has the signification which would ordinarily be put upon such terms, and bears no peculiar meaning. It includes all such violations of municipal ordinances as are punishable by fine or imprisonment." That court has consistently adhered to that ruling. (*State* v. *Benson*, 171 Minn. 292, 213 N. W. 910; *State* v. *Wong Hing*, 176 Minn. 151, 222 N. W. 639.)

In the case of *State ex rel. Streit* v. *Justice Court*, 45 Mont. 375, 48 L. R. A. (n. s.) 156, 123 Pac. 405, it was held that the term "public offense," as used in section 9677, Revised Codes of 1907, now section 12395, does not include violations of city ordinances so as to justify the issuance of a search-warrant. But a search-warrant is directed by section 12394 to issue in the name of the state, and it is apparent that the legislature, in enacting the statutes relating to the issuance of a search-warrant, intended that it should issue only for the threatened infraction of a state law and not a city ordinance. Otherwise it would have authorized its issuance in the name of the city. This court, under our statutes, properly refused to extend the use of such a sharp weapon to a threatened infraction of a city ordinance. But that the violation of a city ordinance may amount to a public offense within the meaning of other statutory provisions we have no doubt.

This brings us to a consideration of the case of *City of Bozeman* v. *Nelson*, 73 Mont. 147, 237 Pac. 528, 532, relied upon by relator, and which no doubt furnished the basis of the ruling of the trial court. In that case this court said: "At the trial of this case in the district court, and in their briefs filed in this court, counsel appear to have proceeded upon the theory that this is a criminal prosecution. Such, however, is not the fact. In *City of Helena* v. *Kent*,

32 Mont. 279, 4 Ann. Cas. 235, 80 Pac. 258, it was expressly held that proceedings against one for the infraction of a local police regulation are not criminal in their nature. To the same effect are the cases of *State ex rel. Butte* v. *District Court*, 37 Mont. 202, 95 Pac. 841, and *State ex rel. Streit* v. *Justice Court*, 45 Mont. 375, 48 L. R. A. (n. s.) 256, 123 Pac. 405. For this reason the ordinary rules governing appeals in civil actions are applicable to this case.'' It thus appears that the question of the nature of the proceeding was not briefed in that case or necessarily involved in the decision. There was little consideration given to the question, and the conclusion there announced is not supported by the cases cited, and it is hereby modified to conform to the views herein stated.

The complaint filed in the defendant court indicates that it seeks to impose a fine, and the proceeding is therefore one for a public offense, as that term is defined in section 10721 and used in section 12302, and the warrant of arrest was properly issued under section 12303. The defendant court has jurisdiction over the relator. The district court erred in overruling the motion to quash and in entering judgment for relator.

The judgment is reversed and the cause remanded to the district court of Powell county, with direction to sustain the motion to quash the alternative writ.

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES MATTHEWS and FORD, and HONORABLE WILLIAM L. FORD, District Judge, sitting in place of MR. JUSTICE GALEN, absent on account of illness, concur.